AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: 11/12/21

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

NOV 1 2 2021

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A BLACK MOTOROLA MOTO E6,<br>IMEI: 352176104066321 | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. M-21- 648 -SM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 922(g)(3) | Drug User in Possession of a Firearm and Ammunition |
| 21 U.S.C. § 856 | Maintaining a Drug-Involved Premises |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rachel Cathie, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/12/21

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is a Black Motorola Moto E6, IMEI 352176104066321 hereinafter the "Device." The Device is currently located in secure evidence storage at the Oklahoma City Police Department property room located at: 700 Colcord Drive, Oklahoma City, OK 73102.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.     All records on the Device described in Attachment A that relate to violations of 21 U.S.C § 856(a)(1) and 18 U.S.C §§ 922(g)(1), (3) involving Thomas Theodore WILSON, Kayla CAWOOD, and Misty SMITH, including:

a.   Evidence, including photographs and text messages, about matters relating to obtaining a firearm, ammunition, and/or controlled substances, including any messages expressing an interest to purchase a firearm, ammunition, or controlled substances; any messages negotiating a price for a firearm, ammunition, or controlled substances; any messages discussing the facts of a sale;

b.   Evidence, including photographs and text messages, about matters related to the possession of a firearm or ammunition;

c.   Evidence, including photographs and text messages, about matters related to the use of controlled substances, including any messages inviting people to their residence to use controlled substances or messages discussing the use of controlled substances at their residence;

d.   Evidence, including photographs and text messages, about matters related to their criminal history;

e.   Evidence indicating the identity of the person(s), including full name and contact information, who communicated with the user of the device about matters relating to obtaining or possessing a firearm or ammunition;

    f.  Evidence indicating the identity of the person(s), including full name and contact information, who communicated with the user of the device about matters relating to the use of controlled substances;

    g.  Evidence indicating how and when the device was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation;

    h.  Evidence concerning the types, amounts, and prices of controlled substances acquired as well as dates, places, and amounts of specific transactions;

    i.  Evidence concerning any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

    j.  Evidence of the violations described above, including communications with others who possess contraband.

2.    Evidence of who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

3.    Evidence of software that would allow others to control the Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4.    Evidence of the lack of such malicious software;

5.      Evidence indicating how and when the Device was accessed or used to determine the chronological context of the Device's access, use, and events relating to crime under investigation and to the Device's user(s);

6.      Evidence indicating the Device user's state of mind as it relates to the crimes under investigation;

7.      Evidence of the attachment to the Device to other storage devices or similar containers for electronic evidence;

8.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

9.      Evidence of the times the Device was used;

10.     Passwords, encryption keys, and other access devices that may be necessary to access the Device;

11.     Records of or information about Internet Protocol addresses used by the Device;

12.     Records of or information about the Device's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

13.     Contextual information necessary to understand the evidence described in this attachment;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A BLACK MOTOROLA MOTO E6, IMEI: 352176104066321, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE OKLAHOMA CITY POLICE DEPARTMENT PROPERTY ROOM IN OKLAHOMA CITY, OK** | **Case No. 21-___648___-SM** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Rachel Cathie, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7) that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent employed by Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") with Homeland Security Investigations ("HSI"). I have the authority to investigate violations of federal and state laws including, but not limited to, human trafficking, alien smuggling, narcotics smuggling, intellectual

property rights violations, child pornography, weapons trafficking, and organized criminal activity. I have been employed with HSI since September 2019 and have completed the Criminal Investigative Training Program and Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the Oklahoma City Office in the Area of Responsibility of the Special Agent in Charge in Dallas, Texas. Prior to my tenure as a Special Agent, I graduated from Syracuse University with a Bachelor of Arts in Political Science and History. I have worked with other experienced local, state, and federal law enforcement officers, as well as prosecuting attorneys, and have become familiar with human trafficking, criminal violations, and investigative techniques.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      As a result of my training and experience, I am aware that it is a violation of Title 18, United States Code, Section 922(g)(1), for any person who has been convicted of a felony offense to possess a firearm or ammunition, which has affected interstate or foreign commerce. I am also aware that it is a violation of Title 18, United States Code, Section 922(g)(3), for any person who is an unlawful user of controlled substances to possess a firearm or ammunition, which has affected interstate or foreign commerce. I am also aware that it is a violation of Title 21, United States Code, Section 856, to maintain a drug-involved premises for the purposes of using methamphetamine.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is (i) a Black Motorola Moto E6, IMEI 352176104066321 hereinafter the "Device." The Device is currently located in secure evidence storage at the Oklahoma City Police Department property room located at: 700 Colcord Drive, Oklahoma City, OK 73102.

6.      The applied-for warrant would authorize the forensic examination of the Device, as set forth in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On August 12, 2021, the Oklahoma City Police Department (OCPD) Vice Unit received information from a confidential informant (CI) about a woman who was attempting to sell her baby for a kilo of "dope" and was living with a man known as "Slim." The CI agreed to coordinate a meeting between the individuals selling the baby and law enforcement under the guise that law enforcement would be posing as "buyers" of the child. The CI attempted to arrange a meeting, but the individuals stopped communicating with the CI. The OCPD detectives made plans to follow up on the information the following day.

8.      On August 13, 2021, OCPD Vice Detectives and OCPD Hefner Impact were at a trailer park located at 6709 NW 10th St., #1, Oklahoma City, OK, which is where "Slim" and a woman who recently gave birth to a child were said to live. "Slim" was later identified as Thomas Theodore WILSON (WILSON) and the woman who recently had a child was Kayla CAWOOD (CAWOOD). OCPD identified a red Chevy sedan bearing an

Oklahoma license plate of HJW449 at NW 10th and Oakdale that was seen leaving the address of 6709 NW 10th St. Oklahoma City, OK. The sedan's front windshield was cracked, and the break lamp wasn't functioning. A traffic stop was conducted at NW 10th and Carol Lane, and the driver was identified as Emily CERDA (CERDA) and the passenger was WILSON; both subjects had Canadian County warrants for their arrests. WILSON and CERDA were arrested, and the vehicle was impounded. Upon inventory of the vehicle, a silver Davis .380 handgun with a magazine, and a black holster was discovered concealed under the front dashboard of the vehicle, within reach of both occupants. The firearm was subsequently booked into the OCPD property room.

9.      Following the traffic stop, OCPD Vice Detectives knocked on the trailer door, and Misty SMITH (SMITH) answered the door with CAWOOD. An OCPD Vice Detective interviewed CAWOOD, and she stated that she and her baby lived in the same trailer along with WILSON and another female named "Misty," (SMITH). CAWOOD stated that WILSON was not the biological father but was helping her raise her son and that she and WILSON were dating. CAWOOD told the detective that she uses marijuana and methamphetamine on occasion and stated she was an addict but quit using methamphetamines when she found out she was pregnant and was unsure if her baby would go through withdrawals or not. CAWOOD also said everyone around her was an addict, including WILSON and SMITH, who she lived with at the trailer. The detective asked the last time CAWOOD had used marijuana or methamphetamine, and CAWOOD stated she had used marijuana about an hour prior and had used methamphetamine approximately a week prior. CAWOOD told the detective that the trailer was not a proper living

environment for a child. The detective asked if CAWOOD had personal property inside the trailer, and CAWOOD stated that she had a cell phone inside the trailer. The detective presented a search waiver for the trailer, and CAWOOD gave her consent to search. CAWOOD told the detective that she had a white cell phone and black cell phone located inside the trailer and gave verbal consent to retrieve the phones from the trailer (the cell phones were identified as the Black Motorola Moto E6, IMEI: 352176104066321, and White Sky Device, S/N: 352480112876147).

10.     On the same day, an OCPD Vice Detective interviewed SMITH, and she stated that she had moved into the trailer with WILSON and CAWOOD a couple weeks prior. A search waiver for the trailer was presented to SMITH, and SMITH signed it. After receiving consent from both SMITH and CAWOOD, the detectives began to search the trailer, but once drug paraphernalia and methamphetamine was discovered, OCPD obtained a state search warrant.

11.     On that same day, OCPD officers executed a search warrant on WILSON's residence, located at: 6709 NW 10th St., #1, Oklahoma City, OK. During the execution, officers found: a clear plastic bag containing 0.8 grams of crystal-like substance, which field tested positive for methamphetamine, drug paraphernalia with burnt drug residue, 124 rounds of live .22 caliber bullets, and the Device.

12.     After the search warrant on the residence, an OCPD Vice Detective interviewed SMITH after advising her of her *Miranda* rights. SMITH told the detective that she was told the police were investigating CAWOOD for attempting to sell her own baby for drugs. SMITH told the detective that she was left at the residence every day with

the baby to babysit everyday while CAWOOD would leave. SMITH stated that she never heard CAWOOD mention trading the baby for drugs but did state that CAWOOD used methamphetamine, and SMITH had witnessed CAWOOD using the drug. SMITH then told the detective the pattern to get into the Black ZTE Cell Phone S/N: 320166356185.

13.     On August 19, 2021, OCPD Vice Detectives interviewed WILSON at the Oklahoma County Jail. In the interview, WILSON stated that he uses methamphetamine as does the women that live with him (SMITH and CAWOOD). Because all three individuals who lived at the residence used methamphetamine, it is illegal for WILSON, SMITH, or CAWOOD to be in possession of ammunition.

14.     I have conducted records checks on WILSON and determined that WILSON is a previously convicted felon and therefore, it is illegal for WILSON to be in possession of a firearm or ammunition.

15.     Based on the aforementioned facts, there is probable cause to believe that Thomas Theodore WILSON:

   a.   Did knowingly possess a firearm and ammunition with knowledge that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1);

   b.   Did knowingly possess a firearm and ammunition with knowledge that he was an unlawful user of methamphetamine, in violation of 18 U.S.C. § 922(g)(3);

   c.   Did knowingly open, lease, rent, use, or maintain a place for the purpose of using methamphetamine, in violation of 21 U.S.C. § 856(a)(1).

16.     Based on the aforementioned facts, there is probable cause to believe that Kayla CAWOOD:

      a.  Did knowingly possess ammunition with knowledge that she was an unlawful user of methamphetamine, in violation of 18 U.S.C. § 922(g)(3);

      b.  Did knowingly open, lease, rent, use, or maintain a place for the purpose of using methamphetamine, in violation of 21 U.S.C. § 856(a)(1).

17.     Based on the aforementioned facts, there is probable cause to believe that Misty SMITH:

      a.  Did knowingly possess ammunition with knowledge that she was an unlawful user of methamphetamine, in violation of 18 U.S.C. § 922(g)(3);

      b.  Did knowingly open, lease, rent, use, or maintain a place for the purpose of using methamphetamine, in violation of 21 U.S.C. § 856(a)(1).

18.     The Device is currently located in secure evidence storage at the Oklahoma City Police Department property room located at: 700 Colcord Drive, Oklahoma City, OK 73102. In my training and experience, I know that the Device have been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the Device first came into the possession of OCPD.

19.     From my training and experience, I know that the acquisition of illegal substances and the unlawful acquisition of firearms and ammunition are conspiratorial crimes. Individuals who possess controlled substances do so with the assistance of others. Drug users often use their cell phones to communicate with their source of supply. Additionally, individuals who are prohibited from possessing firearms and ammunition,

illegally obtain them with the assistance of others. These individuals often use their cell phones to communicate with others who may purchase firearms or ammunition for them. Records of these communications and the contact information of those who assist in the unlawful acquisition of firearms and ammunition are often saved on the individual's phone.

20.     Based on my training and experience, I know it is common for individuals who illegally possess controlled substances and firearms to conceal the contraband in secure locations within their residence, motor vehicles, and other real property over which they have dominion and control. It is also common for individuals who illegally possess firearms and controlled substances to communicate and share information about the use of drugs and store communications about the use of drugs and firearms on cellular devices.

21.     Based on my training and experience, I know that individuals who illegally possess firearms, ammunition, and controlled substances often take and store photographs of themselves with firearms, ammunition, and controlled substances and usually take or store these photographs with their personal cell phones.

22.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23.     Based on my training, experience, and research, I know that an examination of electronic devices, such as the Device, can reveal the approximate location of the device and the user by associating a specific date and time with historical GPS data, historical

cell-site data, and logs of Wi-Fi networks.  Additionally, an examination can reveal the Device's unique identifiers (phone number, IMEI, IMSI, etc.).  These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices, such as the Device, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently

being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

28.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

29.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Device described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

RACHEL CATHIE
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on November 12, 2021:

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The property to be searched is a Black Motorola Moto E6, IMEI 352176104066321 hereinafter the "Device." The Device is currently located in secure evidence storage at the Oklahoma City Police Department property room located at: 700 Colcord Drive, Oklahoma City, OK 73102.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 21 U.S.C § 856(a)(1) and 18 U.S.C §§ 922(g)(1), (3) involving Thomas Theodore WILSON, Kayla CAWOOD, and Misty SMITH, including:

   a.   Evidence, including photographs and text messages, about matters relating to obtaining a firearm, ammunition, and/or controlled substances, including any messages expressing an interest to purchase a firearm, ammunition, or controlled substances; any messages negotiating a price for a firearm, ammunition, or controlled substances; any messages discussing the facts of a sale;

   b.   Evidence, including photographs and text messages, about matters related to the possession of a firearm or ammunition;

   c.   Evidence, including photographs and text messages, about matters related to the use of controlled substances, including any messages inviting people to their residence to use controlled substances or messages discussing the use of controlled substances at their residence;

   d.   Evidence, including photographs and text messages, about matters related to their criminal history;

   e.   Evidence indicating the identity of the person(s), including full name and contact information, who communicated with the user of the device about matters relating to obtaining or possessing a firearm or ammunition;

f.  Evidence indicating the identity of the person(s), including full name and contact information, who communicated with the user of the device about matters relating to the use of controlled substances;

g.  Evidence indicating how and when the device was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation;

h.  Evidence concerning the types, amounts, and prices of controlled substances acquired as well as dates, places, and amounts of specific transactions;

i.  Evidence concerning any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

j.  Evidence of the violations described above, including communications with others who possess contraband.

2.  Evidence of who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

3.  Evidence of software that would allow others to control the Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4.  Evidence of the lack of such malicious software;

5. Evidence indicating how and when the Device was accessed or used to determine the chronological context of the Device's access, use, and events relating to crime under investigation and to the Device's user(s);

6. Evidence indicating the Device user's state of mind as it relates to the crimes under investigation;

7. Evidence of the attachment to the Device to other storage devices or similar containers for electronic evidence;

8. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

9. Evidence of the times the Device was used;

10. Passwords, encryption keys, and other access devices that may be necessary to access the Device;

11. Records of or information about Internet Protocol addresses used by the Device;

12. Records of or information about the Device's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

13. Contextual information necessary to understand the evidence described in this attachment;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.